UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK         FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X
YOLANDA PARKER,                                :
                                               :
                            Plaintiff,         :        MEMORANDUM
                                               :        AND ORDER
        - against -                            :
                                               :        04 CV 2257 (JG)
THE CITY OF NEW YORK, and                      :
NEW YORK CITY OFF-TRACK BETTING,               :
                                               :
                            Respondent.        :
---------------------------------------------------------------- X

A P P E A R A N C E S :

    DRUMMOND & CRAWFORD, PC
        11 Sunrise Plaza, Suite 305
        Valley Stream, New York 11580
    By:    Stephen L. Drummond
        Attorneys for Plaintiff

    MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        100 Church Street
        New York, New York 10007
    By:    A. Ali Ayazi
        Assistant Corporation Counsel
        Attorney for Defendants

JOHN GLEESON, United States District Judge:

        Yolanda Parker sued the City of New York and New York City Off-Track Betting ("OTB") alleging, among other things, that she was terminated from her job as a telephone betting agent for OTB in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*. Parker also claims that her termination was motivated by racial discrimination, and she seeks damages therefor pursuant to 42 U.S.C. § 1981. I previously dismissed Parker's Title VII claims for

gender- and race-based discrimination in a Memorandum and Order issued November 18, 2004, familiarity with which is assumed, because Parker failed to present them first to the Equal Employment Opportunity Commission ("EEOC").

The defendants have moved for summary judgment on Parker's remaining claims. I heard oral argument on the motion on May 12, 2006 and reserved decision. For the reasons set forth below, the motion is granted in part with respect to Parker's FMLA claim; it is otherwise denied. I assume the parties' familiarity with the background of the case and the proceedings so far. I write this brief memorandum in order to crystallize the issues for trial.

DISCUSSION

A. <u>The ADA Claim</u>

The defendants' motion for summary judgment on Parker's ADA claim does not present a close question. In order to make out a prima facie case under the ADA, a plaintiff like Parker who claims that she can perform a particular job with a reasonable accommodation must show that she "is a person with a disability under the meaning of the ADA; (2) [her] employer [is] covered by the statute [and] had notice of [her] disability; (3) with reasonable accommodation, [she] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004).

Parker's "chronic" violations of OTB's Agent Productivity Reports ("APR") policy -- requiring that a betting agent be logged into her work station for at least 80% of her shift -- amounted to total of approximately five and one-half hours of extra time away from her work station between December 2000 and August 2002. And evidence in the record shows that OTB allowed at least one other disabled worker to use her sick and annual leave time to

compensate for such minor deficiencies. Specifically, Doreen Wong, OTB's Equal Employment Opportunity Officer, wrote to Mitchell Ross as follows:

> As you know, a Telephone Agent is not subject to disciplinary actions if the time he or she is permitted to be away from his workstation is less than 20% of the workday, or 84 minutes in a 7 hour shift .... If you find that you need additional time over and above this amount due to your medical condition, [then as an accommodation] [y]ou will be permitted to charge this additional time to your available sick leave balance. If you have exhausted your sick leave, you will be permitted to utilize any available annual leave. If you have exhausted both your sick leave and annual leave, you will not receive compensation for this additional block of time.

Supplemental Declaration of Ali Ayazi, Ex. SS. Had Parker been afforded the same accommodation, she would have been required to allocate less than one day's sick leave to make up for the whole of her "chronic" problem. That, it seems to me, would have been an eminently reasonable accommodation, yet OTB fired Parker instead.

OTB's argument that Parker failed to give notice that her disability was the reason for her continued appearance on the APR is unpersuasive and, in any event, does not warrant summary judgment. For one thing, Parker disputes it by stating that she repeatedly told her supervisors she needed more time than the APR rule afforded her because of her back problems. That alone is enough to get past summary judgment, as the jury might reasonably believe Parker's testimony to that effect.

In addition, Wang's letter to Parker specifically acknowledges that Parker "inquired about the possibility of being given an exotic schedule," Declaration of Ali Ayazi, Exhibit U, which would have allowed Parker to work longer shifts (9-12 hours) fewer days a week. Parker claims she requested such a schedule so that she could use her days off both to attend physical therapy to rest her back, which would have left her feeling comfortable enough to comply with the 80% rule on her work days. The defendants have come forward with little

evidence that this accommodation would have been burdensome at all, much less unduly burdensome. Indeed, Parker's supervisor Sebastian Camuti testified at his deposition that allowing Parker to work longer shifts fewer days a week would not have caused OTB any financial loss. Plaintiff's Statement of Disputed Facts, Ex. C at 130.

Finally, the defendants' argument, based on Dr. Bernadette Sheridan's letter of September 24, 2003, that Parker has been completely unable to work from the time that she was terminated is one they will have to make to the jury. In my view, Dr. Sheridan's letter is ambiguous at best. It states:

> [Yolanda Parker] has been under my care from 1/13/2003. Ms. Parker was terminated from employment 2/7/03. Since that time, she has been unable to seek employment due to worsening Lumbar Spondilolithesis. She has had Neurosurgical, Orthopedic, and Rehabilitation Medicine consultations since that time. Presently she is attending physical therapy 3 times weekly.
>
> Her condition is considered chronic and worsening. She is unable to return to work at this time.

Declaration of Ali Ayazi, Ex. HH. From this, perhaps a jury could find that Parker's condition worsened so immediately after she was terminated that she was no longer able to perform the essential functions of her job thereafter. But a jury might just as reasonably infer that when she was terminated, Parker was ready, willing, and able to continue working as she had been -- though not prepared to seek other employment -- but that her condition steadily worsened such that she was unable to return work as of September 2003. In any event, this question goes more to damages than to liability, as it is beyond dispute that Parker was actually working up until she was fired.

For these reasons, among others, Parker's ADA claim requires a trial.

B.  <u>The § 1981 Claim</u>

The defendants argue that Parker's race-discrimination claim should be dismissed because (1) Parker admitted at her deposition that she did not herself believe she was discriminated against based on her race; and (2) Parker has not produced sufficient evidence of a municipal policy or custom as required under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-95 (1978).

With respect to the latter argument, the defendants' did not raise it until their reply brief. At oral argument on the motion, counsel for the plaintiff argued that he would prove at trial that Sebastian Camuti held policymaking authority for OTB under *Monell* and requested that I reserve decision upon that issue until after the close of the plaintiff's evidence, upon a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(1). In fairness to the plaintiff, I will allow her that opportunity. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("The identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury.").

With respect to the defendants' first argument, Parker's admission at her deposition will surely be damaging to her claim at trial, but it is not dispositive. It is possible, and a jury could reasonably find, that Parker's race was a motivating factor in OTB's decision to fire her, even without Parker knowing it at the time. It could be that only later -- say, after discovering through this lawsuit that several similarly situated non-black employees were treated more favorably -- did Parker come around to the view that her race may have accounted for her termination.

C.   The FMLA Claim

The plaintiff's FMLA claim is something of a moving target. The complaint alleges that Parker "was entitled to 12 work weeks of leave during the period of ... 2002 into 2003" and that the defendants infringed that right "by refusing to grant Plaintiff leave, punishing Plaintiff for taking such leave, denying Plaintiff benefits, discharging Plaintiff, and / or refusing to restore Plaintiff to the position, financially and / or otherwise, that Plaintiff held before the leave." Complaint ¶ 97. To the extent Parker's FMLA claim simply mirrors her ADA claim -- that she should have been allowed to use her sick and annual leave to compensate for her violations of the APR rule -- it survives the defendant's motion. The FMLA entitles employees like Parker to "12 workweeks of leave during any 12-month period ... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Assuming Parker can prove it was medically necessary, she was entitled to take such leave "intermittently," *id*. at § 2612(b)(1), for the short stretching breaks she needed.

But that does not appear to be the thrust of her claim; in fact quite the contrary. In moving for summary judgment, the defendants, at least, understood Parker's claim to be that OTB violated the FMLA by *requiring* her to use her sick and annual leave to make up for the time she missed due to her disability. The FMLA says exactly the opposite: "[A]n employer may require the employee ... to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under [the FMLA] ... for any part of the 12-week period of such leave ...." 29 U.S.C. § 2612(d)(2).

In response to the defendants' motion, Parker's claim transformed into one asserting that OTB violated the FMLA by terminating her for a second time on October 18, 2004 -- at which point she had been absent from work on medical leave for more than a year -- on the

6

ground that her absence was due to workplace-related injuries. Parker has cited to no provision of the FMLA that grants such a right, and I can find none. As the defendants point out, when Parker was terminated the second time, she had already been allowed 40 weeks more leave than the 12 weeks required under the FMLA. Accordingly, the defendants' motion for summary judgment on Parker's FMLA claim is granted as far as it goes; the two theories of liability Parker appears to have advanced are not viable. To the extent that Parker seeks damages under the FMLA on the theory that OTB was required to allow her to use her FMLA leave to make up for the time her disability caused her to violate the APR Rule, she may go forward with such a claim.

## CONCLUSION

The defendants' motion for summary judgment is denied as to Parker's ADA and § 1981 claims and granted in part as to her FMLA claim. Jury selection and trial shall begin July 10, 2006 at 9:30 AM.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
       May 26, 2006